UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| FREE SPEECH SYSTEMS, LLC, d/b/a INFOWARS<br><br>        Plaintiff,<br><br>  v.<br><br>STEVE DICKSON, in his personal capacity and as administrator of the Federal Aviation Administration; and the FEDERAL AVIATION ADMINISTRATION,<br><br>        Defendants. | Case No. 1:21-cv-00826<br><br>**COMPLAINT**<br><br>**Freedom of the Press**<br><br>**U.S. Const. Amend. I**<br><br>**[Jury Demanded]** |

For its Complaint against Defendants Steve Dickson and the Federal Aviation Administration, Plaintiff Free Speech Systems, LLC ("Infowars") complains as follows:

**INTRODUCTION**

In the past decade, the use of unmanned aircraft systems ("UAS") have proliferated in the United States, allowing citizens, commercial operators, and journalists the ability to view the world from a different perspective.  Today, over 867,000 UAS have been registered for use in the United States by the Federal Aviation Administration.[1]  As adoption of UAS has grown among the public, likewise has UAS use grown among journalists, who are able to utilize UAS to share their stories from a unique viewpoint that tells stories in a new and compelling way.  Drones are now used by journalists to cover marches and protests,[2] wildfires,[3] and migrant detention facilities.[4]

Because of this, however, the United States government has grown to recognize the danger that UAS present in terms of limiting how the government might control the narrative of a crisis

---

[1]    *See* FAA, UAS by the Numbers <https://www.faa.gov/uas/resources/by_the_numbers/> (last accessed Sept. 16, 2021).

[2]    *See, e.g.,* CNN AIR (@CNN_AIR), Twitter (Jan. 19, 2019, 7:33 PM), https://perma.cc/GR4A-QT3M.

[3]    *See, e.g.,* Joseph Serna, Devastating Drone Images Show Neighborhood Hit by Shasta County Fire, L.A. Times (Aug. 6, 2018, 2:40 PM), https://perma.cc/RK56-T3R2.

[4]    *See, e.g.,* Matt Novak, Journalists Start Using Drones to View Immigrant Detention Camps After Government Blocks Entry, Gizmodo (June 22, 2018), https://perma.cc/UBU5-HFUS.

and exposing government falsehoods and/or malfeasance.  Infowars has been covering the crisis at the southern border of the United States.  A current flashpoint around the immigration debate is occurring at the Del Rio International Bridge in Southern Texas.  Current reports place the number of immigrants seeking refuge under the bridge, waiting to enter the United States, at over 10,000.  Infowars has a team of journalists on scene at the International Bridge covering the humanitarian crisis, and have used UAS footage to convey the scale of the crisis in a manner that traditional photography is unable to capture.

In response to the effectiveness of this coverage by Infowars and other journalists, the United States government took the extraordinary step of banning all UAS use at or near the flashpoint of this crisis by issuing a Temporary Flight Restriction.  The government has gone further than merely ordering that The Press may not use drones to gather the news--it is using electronic countermeasures to make it that drones can not even fly in the area.  The government's implementation of the Temporary Flight Restriction serves no other purpose than to hamper the efforts of the press in covering the unfolding crisis, in violation of Free Speech System's First Amendment Rights and should not stand.

## JURISDICTION AND VENUE

1.      This is a civil action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the First Amendment of the United States Constitution. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2201.

2.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3.      Plaintiff Free Speech Systems, LLC ("FSS"), a Texas limited liability company, is a newsgathering agency headquartered in Austin, Texas, which does business under the name INFOWARS.  Its principal is Alex Jones, a political pundit, commentator, and journalist.

4.      Defendant Steve Dickson ("Dickson") is the current administrator of the Federal Aviation Administration.  Mr. Dickson is charged with overseeing and administering the Federal Aviation Administration.  Mr. Dickson is sued in both his official and individual capacities.

5.      Defendant Federal Aviation Administration ("FAA") is an agency of the federal government of the United States of America, organized pursuant to 49 U.S.CC. § 106, and operates as an administration in the United States Department of Transportation.

## STATEMENT OF RELEVANT FACT

### *Free Speech Systems*

6.      INFOWARS is a newsgathering organization which operates a popular news, punditry, political commentary, and entertainment website at <infowars.com>.  It publishes news articles on matters of public interest, and its opinion and analysis of daily events and broadcasts a daily program which is viewed by an audience in the United States and across the globe.

7.      INFOWARS employs journalists who not only report on the news but also investigate and break important news stories.

### *UAS and the Press*

8.      Unmanned Aircraft Systems ("UAS") are a tool for the press to view the world through a unique lens and transmit that view to the public.

9.      Use of UAS provide the press with a unique means to photograph locations that are otherwise inaccessible and to show scale and mass in public events involving large numbers of people, in a way that terrestrial reporting never could.

10.      Without the means of using UAS, the press are limited in how they photograph events to traditional means, which are often functionally inferior to the use of UAS.

11.      Nearly all UAS sold in the United States are equipped with cameras which are capable of taking videos and photographs.

12.      Taking photographs and videos using UAS is a typical way for the press to capture and convey news stories.

13.     Without special authorization, commercial UAS operators are not authorized to operate UAS at more than 400 ft of elevation.  *See* 14 C.F.R. § 107.51.

14.     The purpose of the 400 ft elevation limitation is to prevent UAS from interfering with the operation of manned aircraft.

### *Del Rio Migrant Crisis*

15.     A growing crisis is currently unfolding near Del Rio, Texas, where thousands of migrants from Haiti and other countries are amassing at the border, attempting to enter the United States (hereinafter, "Del Rio migrant crisis").  *See* Luke Barr, *About 10,000 migrants being held under bridge in Del Rio, Texas*, ABC NEWS (Sept. 16, 2021);[5] Sandra Sanchez and Julian Resendiz, *8,000 migrants await processing under international bridge in Del Rio*, Texas, KXAN (Sept. 16, 2021);[6] James Dobbins et al., *Thousands of Migrants Huddle in Squalid Conditions Under Texas Bridge*, NEW YORK TIMES (Sept. 16, 2021);[7] Arelis R. Hernández and Nick Miroff, *Thousands of Haitian migrants wait under bridge in South Texas after mass border crossing*, WASHINGTON POST (Sept. 16, 2021).[8]

16.     At current estimations, more than 10,500 migrants are currently taking refuge under the Del Rio International Bridge, and the number of migrants there is growing.

17.     Because of the location it is difficult, if not impossible, for the press on the ground to access where the migrants are located.

18.     Because of the significant number and the remote location of the migrants, it is difficult for the press to photograph the mass of migrants with traditional means, which renders the press unable to fully express the scope of the crisis in visual format, which is a critical component of the news stories that are being covered on the ground.

---

[5]     https://abcnews.go.com/US/10000-migrants-held-bridge-del-rio-texas/story?id=80070865
[6]     https://www.kxan.com/border-report/8000-migrants-await-processing-under-international-bridge-in-del-rio-texas/
[7]     https://www.nytimes.com/2021/09/16/us/texas-migrants-del-rio.html
[8]     https://www.washingtonpost.com/national/haitian-migrants-mexico-texas-border/2021/09/16/4da1e366-16fe-11ec-ae9a-9c36751cf799_story.html

19.     INFOWARS and many other news organizations have been present on the ground in Del Rio will the migrant crisis has been unfolding.

20.     INFOWARS and other news organizations have been using UAS photography as a newsgathering tool to capture images and videos of the mass of migrants and to measure, estimate, and document facts such as crowd size and movements across the border during this breaking news event and humanitarian crisis.

21.     The use of UAS is a critical means for INFOWARS to produce breaking news relating to the Del Rio migrant crisis and to inform the public about this humanitarian crisis.

### *The Temporary Flight Restriction*

22.     A Temporary Flight Restriction ("TFR") is a restriction on an area of airspace which is created by the FAA.

23.     The FAA is authorized to manage the airspace of the United States pursuant to 49 U.S.C. § 40103.

24.     The FAA manages the airspace of the United States under authority vested in Title 14 of the Code of Federal Regulations (14 CFR) parts 91 and 99.

25.     UAS are governed by rules implemented by the FAA.

26.     UAS operators must comply with rules implemented by the FAA under penalty of fines or imprisonment.

27.     On September 16, 2021 at 2218 UTC, the FAA issued Notice to Airman ("NOTAM") FDC 1/9857 regarding a TFR implemented in an area covering a 2-mile radius which directly surrounds the Del Rio International Bridge.  *See* NOTAM FDC 1/9857, attached as **Exhibit 1**.

28.     The TFR has an altitude of 1,000 feet.  In other words, the TFR only relates to aircraft and UAS which are operating between the surface and 1,000 feet in the air.  *See* **Exhibit 1**.

29.     Pursuant to FAA regulation, UAS may generally only operate at a maximum altitude of 400 feet.

30.     NOTAM FDC 1/9857 specifies:

No UAS operations are authorized in the areas covered by this NOTAM (except as described).

EXC AS SPECIFIED BLO EXCLUDING MEXICAN AIRSPACE:

A. UAS OPS MAY BE AUTH WI THE DEFINED SSI AIRSPACE IF IN COMPLIANCE WITH THE RQMNTS LISTED BLW: 1) UAS OPS IN DCT SUPPORT OF AN ACT NTL DEFENSE, HOMELAND SECURITY, LAW ENFORCEMENT, FIREFIGHTING, SAR, OR DISASTER RESPONSE MISSION; 2) UAS OPS IN SUPPORT OF EVENT OPS; 3) COMMERCIAL UAS OPS WITH A VALID STATEMENT OF WORK; 4) MUST BE IN POSSESSION OF AN APPROVED SPECIAL GOVERNMENTAL INTEREST(SGI) AIRSPACE WAIVER; 5) AND COMPLY WITH ALL OTHER APPLICABLE FEDERAL AVIATION REGULATIONS.

B. UAS OPR IDENTIFIED IN A.1, A.2 OR A.3 ABV MUST APPLY FOR A SGI WAIVER VIA EMAIL AT 9-ATOR-HQ-SOSC@FAA.GOV.

C. UAS OPR WHO DO NOT COMPLY WITH APPLICABLE AIRSPACE RESTRICTIONS ARE WARNED THAT PURSUANT TO 10 U.S.C.SECTION 130I AND 6 U.S.C.SECTION 124N, THE DEPARTMENT OF DEFENSE(DOD), THE DEPARTMENT OF HOMELAND SECURITY(DHS) OR THE DEPARTMENT OF JUSTICE(DOJ) MAY TAKE SECURITY ACTION THAT RESULTS IN THE INTERFERENCE, DISRUPTION, SEIZURE, DAMAGING, OR DESTRUCTION OF UNMANNED ACFT DEEMED TO POSE A CREDIBLE SAFETY OR SECURITY THREAT TO PROTECTED PERSONNEL, FAC, OR ASSETS.

D. THE SYSTEM OPS SUPPORT CENTER (SOSC), IS THE CDN FAC FOR OPR ACCESS AND IS AVBL DLY FM 0600-2359 EASTERN, TEL 202-267-8276 FOR CDN.

E. THE FAA RECOMMENDS THAT ALL ACFT OPR CK NOTAMS FREQUENTLY FOR POSSIBLE CHANGES TO THIS TFR PRIOR TO OPS WI THIS REGION.OPR MAY REVIEW THE TFR DETAILS ON THE INTERNET AT HTTPS://TFR.FAA.GOV/ OR HTTPS://WWW.1800WXBRIEF.COM. IF QUESTIONS REMAIN, CTC FSS, TEL 800-992-7433.

*See* **Exhibit 1**.

31.     Although Part A of the NOTAM permits some UAS operations, it is written in the conjunctive, meaning that all five requirements must be met for UAS operations to be permitted. Newsgathering is not direct support of a national defense, homeland security, law enforcement, firefighting, SAR, or disaster relief mission.

32.     As a reason for the TFR, NOTAM FDC 1/9857 specified as the reason: "Temporary flight restrictions for Special Security Reasons". *See* **Exhibit 1**.

33.     NOTAM FDC 1/9857 specified its authority to issue the TFR under 14 CFR § 99.7, which provides:

> Each person operating an aircraft in an ADIZ or Defense Area must, in addition to the applicable rules of this part, comply with special security instructions issued by the Administrator in the interest of national security, pursuant to agreement between the FAA and the Department of Defense, or between the FAA and a U.S. Federal security or intelligence agency.

*See* **Exhibit 1**.

34.     NOTAM FDC 1/9857 began effective September 16, 2021 at 2230 UTC and will not end until September 30, 2021 at 2230 UTC, likely after the migrant crisis will have subsided.

35.     Because of the TFR, INFOWARS and other members of the press are unable to deploy UAS for newsgathering purposes.

36.     This is not the first time the FAA has used a TFR as a prior restraint of press freedoms.  During the 2016 protests at the Standing Rock reservation, the FAA likewise used a TFR to inhibit the press's use of UAS to document, report on, and monitor the interactions between activists on the ground and law enforcement.  *See* Jason Koebler, *The Government Is Using a No Fly Zone to Suppress Journalism At Standing Rock*, MOTHERBOARD (Nov. 30, 2016).[9]  The FAA likewise issued a TFR during the 2014 protests in Ferguson, Missouri.  *See Where drone journalism gets interesting: Closed airspace over controversial places*, Drone Journalism Lab (Aug. 12, 2014).[10]

37.     The restriction serves no legitimate governmental purpose.  News drones present no danger, no risk, nor even inconvenience to any legitimate activity.  The news drones do, however, make it impossible for the government to lie to the people about what is happening in Del Rio, the scale of the crisis, and to show the images in a way that tells the full story.

---

[9]     https://www.vice.com/en/article/yp3kak/the-government-is-using-a-no-fly-zone-to-suppress-journalism-at-standing-rock
[10]     https://www.dronejournalismlab.org/post/94569873377/where-drone-journalism-gets-interesting-closed

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Freedom of the Press – U.S. Const. Amend. I

38.     Plaintiff incorporates the foregoing paragraphs as though set forth fully herein.

39.     INFOWARS engages in newsgathering activities that are protected by the First Amendment's guarantee of freedom of the press.

40.     INFOWARS' presence at the Del Rio migrant crisis is in furtherance of its newsgathering activities as a member of the press.

41.     INFOWARS' use of UAS at the Del Rio migrant crisis is in furtherance of its newsgathering activities as a member of the press.

42.     By issuing a TFR under NOTAM FDC 1/9857 and prohibiting the use of UAS at or near the Del Rio migrant crisis, Defendants are interfering with INFOWARS' (and the rest of the press') right gather the news and effecting a prior restraint on FSS's ability to cover the breaking news.

43.     Without the use of UAS at or near the Del Rio migrant crisis, INFOWARS is limited in its abilities to convey breaking news stories to the general public and is forced to resort to inadequate and/or inferior means of newsgathering.

44.     The ability of INFOWARS to engage in activities as a member of the press is unjustifiably harmed by Defendants' use of a TFR to prohibit the use of UAS in the vicinity of the Del Rio migrant crisis.

45.     Defendants issued the TFR under NOTAM FDC 1/9857, which prohibits the press from operating UAS at or near the vicinity of the Del Rio migrant crisis, in order to prevent the press from covering the news event.

46.     Defendants issued the TFR under NOTAM FDC 1/9857, which prohibits the press from operating UAS at or near the vicinity of the Del Rio migrant crisis, in order to deter the press from covering the news event.

47.     Defendants issued the TFR under NOTAM FDC 1/9857, which prohibits the press from operating UAS at or near the vicinity of the Del Rio migrant crisis, in order to inhibit the press's ability to cover the news event.

48.     Defendants issued the TFR under NOTAM FDC 1/9857, which prohibits the press from operating UAS at or near the vicinity of the Del Rio migrant crisis, in order to ensure that the narrative coming out of Del Rio will be either government-controlled, or fed selectively to "journalists" who are willing to promote the government's chosen narrative in a manner more akin to paid public relations mouthpieces.

49.     Defendants' issuance of the TFR under NOTAM FDC 1/9857, which prohibits the press from operating UAS at or near the vicinity of the Del Rio migrant crisis, amounts to a prior restraint on The Press' ability to cover the news event.

50.     There is no legitimate government interest in wholly preventing the press from operating UAS at or near the Del Rio migrant crisis.

51.     Because of the existing 400 ft elevation limitation on the operation of UAS, The Press' use of UAS in the vicinity of the Del Rio migrant crisis is not likely to interfere with the operation of manned aircraft, including any government aircraft that may be operating in the area.

52.     Defendants did not narrowly tailor their regulation of the airspace in the vicinity of the Del Rio migrant crisis in order to allow the press to engage in First Amendment-protected newsgathering activities.

53.     Defendants did not provide any adequate alternative means for The Press to engage in its First Amendment-protected newsgathering activities in Del Rio.

54.     Defendants knew that the institution of the TFR was unconstitutional because the actual purpose of the TFR is to prevent INFOWARS and other members of the press from engaging in newsgathering activities.

55.     Defendants had authority as government officials to prevent INFOWARS and the press from utilizing UAS to cover the breaking news event, and actually exercised that authority to prevent FSS and other members of the press from doing so.

56. Defendants' institution of the TFR, under color of law, violates INFOWARS' right to freedom of the press under the First Amendment of the U.S. Constitution and has caused and/or threatens to causeINFOWARS  irreparable harm.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Free Speech Systems, LLC requests that judgment be entered in its favor and against Defendants as follows:

A. Temporary, preliminary and permanent injunctive relief barring Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction from enforcing NOTAM FDC 1/9857 or any other measure which would prohibit the otherwise lawful use of Unmanned Aerial Systems from operating in the vicinity of the Del Rio migrant crisis for newsgathering activities;

B. Declaratory relief consistent with the injunction, including specifically, declaratory relief to the effect that Defendants' decision to prohibit FSS and the press from utilizing Unmanned Aerial Systems from operating in the vicinity of the Del Rio migrant crisis was unconstitutional;

C. An order mandating Defendants to retract NOTAM FDC 1/9857 or amend NOTAM FDC 1/9857 to exempt FSS and other members of the press from using UAS to engage in newsgathering activities;

D. Attorneys' fees and expenses pursuant to 28 U.S.C. § 2412;

E. Ordinary taxable costs of suit; and,

F. Any further relief as the Court deems just and appropriate.

Dated: September 17, 2021.      Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza (admitted W.D. Tex.)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Email: ecf@randazza.com

Attorneys for Plaintiff,
Free Speech Systems, LLC

RANDAZZA | LEGAL GROUP