UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| FREE SPEECH SYSTEMS, LLC d/b/a INFOWARS,<br><br>Plaintiff,<br><br>v.<br><br>STEVE DICKSON, in his personal capacity and as administrator of the Federal Aviation Administration; and the FEDERAL AVIATION ADMINISTRATION,<br><br>Defendants. | Case No. 1:21-cv-00826-RP<br><br>**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION** |

Plaintiff Free Speech Systems, LLC d/b/a Infowars ("Infowars") requires a temporary restraining order against Defendants Steve Dickson and the Federal Aviation Administration (collectively, "Defendants" or "FAA"). Infowars seeks a temporary restraining order and preliminary injunction to prevent Defendants from interfering with Infowars newsgathering activities in the vicinity of the Del Rio International Bridge, where a migrant crisis of unprecedented proportion is unfolding, to which the government has added a First Amendment crisis. This Motion is made pursuant to Fed. R. Civ. P. 65 .

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0   INTRODUCTION**

Plaintiff Infowars is a news organization dedicated to breaking important news stories and helping inform the public about current events and sharing its' opinions and punditry with its audience. For years, Infowars and its principal, Alex Jones, have served the public by offering online news stories, political opinion, and entertainment, broadcasting programming to millions of viewers in the United States and across the globe. As with many modern news organizations, Infowars employs the use of Unmanned Aerial Systems ("UAS"), colloquially known as 'drones', which enable Infowars to photograph locations that are otherwise inaccessible and to show scale

and mass in public events involving large numbers of people. Modern UAS are incredibly safe and reliable, and are governed by FAA rules and regulations. Infowars and other members of the media regularly employ UAS in their newsgathering activities without risk of harm to others.

In this case, however, the United States government has sought to limit the press's use of UAS in order to prevent the press from reporting on a breaking news story involving thousands of Haitian migrants amassing on the southern border near Del Rio, Texas. While Infowars and other news organizations were on the ground reporting on the story as the crisis worsened, the FAA issued an unconstitutional temporary flight restriction which barred Infowars and other members of the press from using UAS to photograph the extent of the migrant crisis at the Del Rio International Bridge. Although the FAA ostensibly instituted the flight restriction for "special security reasons," the truth is that the FAA wished to prevent Infowars and other members of the press from documenting the unprecedented extent of the crisis and to stifle a growing news story to protect the image of federal government officials.

## 2.0   FACTUAL BACKGROUND

Infowars is a media organization which publishes news, news commentary, political punditry, and entertainment online and through streamed news broadcasts to viewers across the globe. *See* Declaration of Alex Jones ("Jones Declaration"), at ¶ 3. Infowars uses UAS to take photographs and videos as an integral part of its newsgathering activities. *See id.* at ¶ 4. The use of UAS in newsgathering is important because it allows Infowars to photograph breaking news events from a unique perspective, which can show the scale and mass of an event involving a large number of people in a way that traditional photography cannot. *See id.* at ¶ 5.

A growing crisis is currently unfolding near Del Rio, Texas, where thousands of migrants from Haiti and other countries are amassing at the border, attempting to enter the United States. (Hereinafter, "Del Rio migrant crisis"). *See* Luke Barr, *About 10,000 migrants being held under bridge in Del Rio, Texas*, ABC NEWS (Sept. 16, 2021);[1] Sandra Sanchez and Julian Resendiz, *8,000*

---

[1] https://abcnews.go.com/US/10000-migrants-held-bridge-del-rio-texas/story?id=80070865

*migrants await processing under international bridge in Del Rio*, Texas, KXAN (Sept. 16, 2021);[2] James Dobbins et al., *Thousands of Migrants Huddle in Squalid Conditions Under Texas Bridge*, NEW YORK TIMES (Sept. 16, 2021);[3] Arelis R. Hernández and Nick Miroff, *Thousands of Haitian migrants wait under bridge in South Texas after mass border crossing*, WASHINGTON POST (Sept. 16, 2021).[4]  At current estimations, over 10,500 migrants are currently taking refuge under the Del Rio International Bridge, and the number of migrants there is growing.  *See id*.

It is difficult, if not impossible, for the press on the ground to access where the migrants are located.  *See* Jones Declaration at ¶ 7.  Because of the significant number and the remote location of the migrants, it is difficult for the press to photograph the scene with traditional means.  This renders the press unable to fully express the scope of the crisis in visual format, which is a critical component of the news stories.  *See id.* at ¶ 8.  Infowars and many other news organizations have been present in Del Rio while this event unfolds.  *See id.* at ¶ 9.  Infowars and other news organizations have been using UAS photography as a newsgathering tool to capture images and videos of the crisis and to measure, estimate, and document facts such as crowd size, movements across the border, and humanitarian conditions.  *See id.* at ¶ 10.  The use of UAS is a critical means for Infowars to produce breaking news relating to the Del Rio migrant crisis.  *See id.* at ¶ 11.

It is of particular importance that Infowars be permitted to gather news and information in Del Rio.  Infowars is not corporate-owned and is beholden to no political party.  Contrast *Tah v. Glob. Witness Publ'g, Inc.*, 451 U.S. App. D.C. 248, 272, 991 F.3d 231, 255 (2021) (Silberman, J., dissenting) ("the press and media do not even pretend to be neutral news services.")  The relief Infowars seeks should be clear – Infowars seeks to enjoin the government from interfering in newsgathering by Infowars itself, CNN, the New York Times, or The Nation.  The Press is The Press, and if it falls to Infowars to step up to protect Freedom of the Press, it would not be the first

---

[2] https://www.kxan.com/border-report/8000-migrants-await-processing-under-international-bridge-in-del-rio-texas/
[3] https://www.nytimes.com/2021/09/16/us/texas-migrants-del-rio.html
[4] https://www.washingtonpost.com/national/haitian-migrants-mexico-texas-border/2021/09/16/4da1e366-16fe-11ec-ae9a-9c36751cf799_story.html

time in recent history that alternative, non-corporate media has had to do so, while the mainstream press simply follows along with what the government tells them to.[5]

A Temporary Flight Restriction ("TFR") is a restriction on an area of airspace which is created by the FAA. *See* Federal Aviation Administration, What are TFRs? (accessed Sept. 16, 2021).[6] On September 16, 2021 at 2218 UTC, the FAA issued Notice to Airman FDC 1/9857 regarding a TFR implemented in an area covering a 2-mile radius which directly surrounds the Del Rio International Bridge (the "TFR"). *See* NOTAM FDC 1/9857, attached as **Exhibit 1**. The TFR has an altitude of 1,000 feet. In other words, the TFR only relates to aircraft and UAS which are operating between the surface and 1,000 feet in the air. *See id*. The TFR indicated that it was being implemented "for Special Security Reasons." *See id*. Those "special" reasons have not been disclosed. Whose "security" has not been disclosed. Presumably, the "security" is the government's desire to operate out of public view, without embarrassment of its mismanagement of a humanitarian crisis.

Infowars (and The Press at large and thus the public who depend on it) has been harmed, and will continue to be harmed, by the FAA's unconstitutional action. *See* Jones Declaration at ¶ 12. Infowars has expended significant efforts to send its journalists to the Del Rio migrant crisis to produce news. *See id.* at ¶ 13. Even if other Press outlets did not send their own drone and journalists to the area, there are freelance drone pilots that could be hired, and Infowars would be willing to enter into agreements to share its footage with other Press outlets. *See id.* at ¶ 14. The effect of the TFR is that FSS and other members of the press are unable to operate UAS in the vicinity of the Del Rio migrant crisis for newsgathering activities. *See id.* at ¶ 15. With the TFR in place, Infowars is prevented from being able to effectively cover the growing crisis. *See id.* at ¶ 16. Without injunctive relief, Infowars will not be able to effectively document and observe the

---

[5] *See, e.g., Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) (Independent journalist Michael Cernovich intervened in a case involving Jeffrey Epstein, where the public's right to access the court file was infringed upon. The New York Times, despite this being in its back yard, refused to do so. After Cernovich fought this matter for 14 months, finally the only "cavalry" that showed up was Julie Brown, of the Miami Herald, who has been justifiably lauded for her reporting on the matter. Meanwhile, but for the independent journalist, the public would likely have never known about the government's misdeeds in the Epstein case).

[6] https://tfr.faa.gov/tfr2/about.jsp

crisis as it unfolds over the coming days. *See id.* at ¶ 17. Temporary relief is necessary because the Del Rio migrant crisis is a hot news event, and the crisis will likely dissipate before the TFR expires. *See id.* at ¶ 18. Without immediate injunctive relief, Infowars and other members of the press will not be able to document and report on the Del Rio migrant crisis, which is of significant public interest. *See id.* at ¶ 19.

**3.0     LEGAL STANDARD**

Rule 65 Fed. R. Civ. P. provides for temporary restraining orders and preliminary injunctions in federal courts upon notice to the adverse party. *See* Fed. R. Civ. P. 65(a) and (b). A temporary restraining order or preliminary injunction must (1) state the reasons why it issued; (2) state its specific terms; and (3) describe in reasonable detail the act or acts restrained or required. Fed. R. Civ. P. 65(d).

The Supreme Court articulated a four-part standard for issuance of injunctive relief: (1) that plaintiff is likely to succeed on the merits; (2) that plaintiff is likely to suffer irreparable harm if the injunction did not issue; (3) that the balance of equities tips in plaintiff's favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

**4.0     LEGAL ARGUMENT**

**4.1     FSS is likely to succeed on the merits of its claim.**

"Congress shall make no law … abridging the freedom … of the press." U.S. Const., amend. I. "Generally, a prior restraint is constitutional only if the Government 'can establish that 'the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest.''" *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016) (quoting *United States v. Brown*, 218 F.3d 415, 425 (5th Cir. 2000)). "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (quoting *Carroll v. Princess Anne*, 393 U.S. 175, 181 (1968)); *Kinney v. Barnes*, 57 Tex. Sup. J. 1428 at n.7, (Tex. 2014) (citing Walter Sobchak, The Big Lebowski, 1998) ("The Supreme Court has roundly rejected prior restraint.")

By issuing its TFR, the FAA has enacted a prior restraint on Infowars and all other media actively reporting on the Del Rio migrant crisis.[7] The FAA cannot show that allowing Infowars use of its UAS for reporting on the crisis will pose any clear and present danger or serious imminent threat to the government or the migrants. Indeed, UAS are regularly allowed to operate elsewhere in the country – even where there are large crowds of people – and commercial UAS operators are specially trained for the protection of public safety. Moreover, the low altitude at which UAS fly (less than 400 feet) means that they will bear no threat to government aircraft operating in the vicinity of the Del Rio International Bridge. Because it is clear that no actual threat exists, it is likely that the FAA's reasoning for banning the use of UAS in the vicinity is solely for the suppression of the freedom of the press.

Given that the NOTAM is written in the conjunctive, all five of the conditions it imposes must be met.[8] *See* **Exhibit 1**. This includes three separate requirements that the UAS operator must be working in direct support of government workers on the ground, at their direction. *Id*. Accordingly, the FAA may suggest that it could re-draft it to be in the disjunctive. Nevertheless, Condition # 4 would still function as a prior restraint – as it requires journalists who have been operating unhindered up until today, without incident, to ask the federal government essentially for permission to gather news. Where news gathering is unreasonably restricted in advance, there is a prior restraint. *Bralley v. Albuquerque Pub. Sch. Bd. of Educ*., No. 13-cv-0768 JB/SMV, 2015 U.S. Dist. LEXIS 47065, 2015 WL 13666482, at *3 (D.N.M. Feb. 25, 2015) report and recommendation adopted, 2015 U.S. Dist. LEXIS 46595, 2015 WL 1568834 (D.N.M. Mar. 30, 2015).

---

[7] Infowars anticipates the Government will claim its TFR is a content-neutral time, place, and manner restriction because it does not explicitly target newsgathering activities. It does not deserve this level of credulousness, as there are no conceivable security-related reasons for it and it has the obvious and foreseeable effect of stifling newsgathering.

[8] "1) UAS OPS IN DCT SUPPORT OF AN ACT NTL DEFENSE, HOMELAND SECURITY, LAW ENFORCEMENT, FIREFIGHTING, SAR, OR DISASTER RESPONSE MISSION; 2) UAS OPS IN SUPPORT OF EVENT OPS; 3) COMMERCIAL UAS OPS WITH A VALID STATEMENT OF WORK; 4) MUST BE IN POSSESSION OF AN APPROVED SPECIAL GOVERNMENTAL INTEREST(SGI) AIRSPACE WAIVER; 5) AND COMPLY WITH ALL OTHER APPLICABLE FEDERAL AVIATION REGULATIONS."

This is constitutionally impermissible.  The United States Government does not, and should not, license journalists.  The First Amendment interests implicated by the FAA's actions belong are a prior restraint licensing scheme that preemptively bars the future enjoyment of First Amendment liberties, unless the government grants a license to cover this particular event by hiring the journalist as a government contractor.

Further, any journalist who asks for the government's permission to cover its apparent failures here will have to wait until the FAA decides to grant it - but there is nothing in the NOTAM that limits their time in which to do so.  The Supreme Court has rejected "prior restraint[s] that fail[] to place limits on the time within which the decisionmaker must issue the license."  *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 225 (1990) (plurality opinion).  A "scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech."  *Id*. at 227.  Any licensing scheme must be "narrow, objective, and definite" to pass constitutional muster.  *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969).  Even if the TFR were written as allowing media UAS operation with prior approval from the FAA, which it is not, the TFR's restrictions would be invalid.

Accordingly, FSS is likely to succeed on the merits of its claim.

### 4.2    FSS has been irreparably injured.

"'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164, 180 (5th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The FAA's issuance of the TFR has irreparably injured Infowars and it is continuing to do so.  In the midst of an unprecedented migrant crisis, the FAA has instituted a total ban on the use of UAS in the vicinity of the event.  Moreover, the crisis is taking place in a location that is mostly inaccessible to the press.  The FAA knows this fact, which is why it chose to implement the TFR so that the press would be impeded from obtaining meaningful imagery and video of the crisis itself, essentially kneecapping the press's ability to demonstrate to the public the scale of the Del Rio migrant crisis – or at least subjecting it to a prior restraint.  Accordingly, the loss of the press's

RANDAZZA | LEGAL GROUP

ability to use UAS in its newsgathering in Del Rio, without governmental control over who gets to cover the news is irreparably harming Infowars and The Press at large.

FSS has been irreparably injured and Plaintiff should be granted its requested relief.

### 4.3   The balance of equities tips in Plaintiff's favor.

Infowars has established that the loss of its ability to document the Del Rio migrant crisis using UAS has irreparably harmed it.  Meanwhile, the sole harm that the FAA's TFR purports to protect is a vague reference to "Special Security Reasons."  *See* **Exhibit 1**.  While it is possible that government aircraft may be operating in the vicinity of the Del Rio International Bridge, it is unlikely that they have any need to descend below 400 feet in that area.  The TFR, however, extends up to a ceiling of 1,000 feet, which acts as a total bar to UAS use in the vicinity.  There is no justification for not allowing the UAS to operate at low altitudes while aircraft fly above; indeed, this is the FAA's basic regulation in every other part of the country, save for locations near airports.  It is clear that the FAA's TFR was not created out of a genuine interest of public safety, but instead to stifle the press from effectively reporting on the crisis at hand.

Accordingly, the balance of equities weighs in favor of granting Plaintiff's requested relief.

### 4.4   Injunctive relief is in the public interest.

"[I]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)).

As previously stated, the Del Rio migrant crisis is being widely reported in the press and is subject to widespread public interest. *See* Luke Barr, *About 10,000 migrants being held under bridge in Del Rio, Texas*, ABC NEWS (Sept. 16, 2021);[9] Sandra Sanchez and Julian Resendiz, *8,000 migrants await processing under international bridge in Del Rio*, Texas, KXAN (Sept. 16, 2021);[10] James Dobbins et al., *Thousands of Migrants Huddle in Squalid Conditions Under Texas Bridge*,

---

[9] https://abcnews.go.com/US/10000-migrants-held-bridge-del-rio-texas/story?id=80070865
[10] https://www.kxan.com/border-report/8000-migrants-await-processing-under-international-bridge-in-del-rio-texas/

NEW YORK TIMES (Sept. 16, 2021);[11] Arelis R. Hernández and Nick Miroff, *Thousands of Haitian migrants wait under bridge in South Texas after mass border crossing*, WASHINGTON POST (Sept. 16, 2021).[12]

The public interest weighs in favor of granting Plaintiff the requested relief.

### 4.5  At most, a minimal bond should be required.

Rule 65 of the Federal Rules of Civil Procedure provides that a court cannot enter injunctive relief unless the moving party "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

The FAA will suffer no damage if the Court issues the requested injunction, which will simply allow Infowars and the rest of The Press to proceed with newsgathering through the use of its UAS. All the injunction will do is restore the status quo ante and allow The Press to exercise its First Amendment rights. For this reason, Infowars requests that the injunction issue with no bond required. If a bond is required, Infowars requests that it be minimal and no more than $100.00.

### 5.0  CONCLUSION

Defendants issued an unconstitutional TFR with the aim of stifling and impeding the press's coverage of a matter of significant public interest. The TFR should not stand, and Plaintiff should be granted an injunction barring enforcement of it.

---

[11] https://www.nytimes.com/2021/09/16/us/texas-migrants-del-rio.html
[12] https://www.washingtonpost.com/national/haitian-migrants-mexico-texas-border/2021/09/16/4da1e366-16fe-11ec-ae9a-9c36751cf799_story.html

Dated: September 17, 2021.            Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza (admitted W.D. Tex.)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
Email: ecf@randazza.com

Attorneys for Plaintiff,
Free Speech Systems, LLC

Case No. 1:21-cv-00826-RP

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 17th day of September 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                      /s/ Marc J. Randazza
                                                      Marc J. Randazza

RANDAZZA | LEGAL GROUP